IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

```
ALVIN MILLER,                    )
                                 )
          Plaintiff,             )
                                 )
     v.                          )    No.  10 C 8057
                                 )
MICHAEL J. ASTRUE,               )
Commissioner of Social Security,)
                                 )
          Defendant.             )
```

**MEMORANDUM OPINION AND ORDER**

Alvin Miller ("Miller") seeks judicial review, pursuant to Social Security Act ("Act") §§405(g) and 1383(c),[1] of the final decision of Commissioner of Social Security Michael Astrue ("Commissioner") that denied Miller's claims for disability insurance benefits ("Benefits") and supplemental security income ("SSI") disability benefits. Miller has moved for summary judgment under Fed. R. Civ. P. ("Rule") 56 or alternatively for a remand to Commissioner, while Commissioner seeks affirmance of his decision. For the reasons stated here, the Rule 56 motion is denied and the case is remanded for further consideration.

**Procedural Background**[2]

Miller filed an application for Benefits and SSI on

---

[1] All further statutory references will take the form "Section --," using the Title 42 numbering rather than the Act's internal numbering. All 20 C.F.R. references are cited "Reg. § --." Miller's memorandum is cited "M. Mem. --."

[2] What follows in the next sections of text is drawn from the administrative record (cited "R. --").

October 29, 2007, asserting onset dates of April 12, 2002 for his SSI application and January 1, 2007 for his Benefits application (R. 185-90).[3] On January 9, 2008 Miller's application was initially denied, and it was again denied on reconsideration on May 22, 2008 (id. 91-103). After filing a timely request for hearing, on November 4, 2009 Miller appeared before ALJ Harmon for that purpose (id. 26).

Testifying at the November 4 hearing ("Hearing") were Miller, medical expert Dr. Bernard Stevens and vocational expert Dr. Richard Hamersma (R. 13). ALJ Harmon's February 11, 2010 decision concluded that Miller had become disabled on August 25, 2008, having been capable of performing light work before that date (id. 13, 17). Because Miller retained disability insurance coverage only through December 31, 2007, ALJ Harmon rejected Miller's Benefits application (id. 13).

On March 15, 2010 Miller filed a request with the Appeals Council seeking review of the unfavorable portion of the ALJ's decision pertaining to the January 1, 2007 to August 24, 2008 time period. (R. 6). After reviewing the ALJ's decision, the Appeals Council declined to reverse or remand on September 22,

---

[3] Peculiarly, both Miller and Administrative Law Judge ("ALJ") Percival Harmon state that both applications list January 1, 2007 as the onset date (M. Mem. 1; R. 13). Accordingly this opinion will also ignore the April 2002 reference, treating January 1, 2007 as the earliest claimed date of disability.

2010 (id. 1-5). On December 20, 2010 Miller filed a complaint for judicial review.[4]

**Factual Background**

Miller was born on August 26, 1953 (and was thus 56 years old at the time of the ALJ's decision), stands between 5 feet 7 inches and 5 feet 8 inches tall and weighs approximately 240 pounds (R. 36-38). After having completed just two years of high school, he later received his GED (id. 36). Miller's previous work experience includes employment as a storekeeper for United Airlines, which is ordinarily considered medium work but would be heavy, semiskilled work based on Miller's description of his job duties (id. 38, 76).

Miller has not performed any substantial gainful activity since January 1, 2007, but as stated earlier he retained disability insurance coverage through December 31, 2007 (R. 174-80, 183). Miller's medical complaints have included chronic pain and numbness (or paresthesia) in his extremities, hypertension, degenerative joint and disc disease, sciatica, chest pain, shortness of breath, heart palpitations, obesity, hyperlipidemia, coronary artery disease, cocaine-induced ischemia, arthritis, Type II diabetes mellitus, and frequent urination (M. Mem. 2-5).

---

[4] Miller's complaint is untimely under Section 405(g) because it was filed more than 60 days after the September 22, 2010 notice of the Appeals Council's decision. Fortunately for Miller, Commissioner failed to raise the subject of untimeliness and therefore waives any objection on that score.

On January 2, 2007 Miller was seen at Stroger Hospital ("Stroger") for complaints of chronic pain in both legs and hands that he had experienced on and off for four to five months (R. 305). There he was noted to have a history of hypertension, degenerative joint disease of the spine and sciatica, but he did not present with any leg weakness (id. 306). He was given refills of Hydrochlorothiazide, Lovastatin, Gnalafel, aspirin and Naproxene and discharged (id. 307).

On September 3, 2007 Miller was hospitalized overnight at Stroger for chest pain, shortness of breath and heart palpitations (R. 282). Doctors noted he was obese and hypertensive and had used cocaine and heroin two days before (id.). Miller's exercise tolerance was not quantitative due to bilateral leg numbness (id.). Findings from an EKG showed ST depression in lateral leads with elevation of cardiac enzymes (id. 278). Miller was treated with Nitrodrip, which decreased his blood pressure and chest pain (id.). He was discharged with a primary diagnosis of cocaine-induced ischemia and secondary diagnoses of hypertension, obesity, hyperlipidemia and substance abuse (id.). He was referred for substance abuse counseling and prescribed Enalapril, Lovastatin, aspirin and Hydrochlorothiazide (id. 278-79).

On October 26, 2007 Miller was seen at Stroger for a follow-up appointment. He then stated he "feels well" but said he was

4

experiencing occasional leg pain rated at 6 on a 1 to 10 pain scale (R. 290). On November 14, 2007 Miller also underwent x-rays of his cervical and lumbar spine at Stroger that showed moderate multilevel degenerative disc disease in the cervical spine (most severe at the C4-C5, C5-C6 and C6-C7 vertebrae) and mild degenerative disc disease of the lumbar spine with vacuum phenomenon (id. 301-02).

Dr. Rochelle Hawkins performed a 35-minute consultative examination on December 7, 2007 (R. 271-77). During that examination Miller reported numbness and tingling in his hands that had lasted for some years (id. 271). Although Miller also complained of difficulty walking, standing and bending (id.), the examination showed Miller had full range of motion in his extremities, spine and all joints, walked with a normal gait and did not require any device to assist him in walking (id. 272-73). Straight leg raises were negative bilaterally (id.). Miller's muscle strength was rated at a 5 out of 5 in all limbs, and he had no difficulty lifting, holding or turning objects with either hand (id.). His gross and fine manipulation was normal in both hands (id.). Dr. Hawkins' diagnostic impressions were paresthesia in the upper and lower extremities, obesity, hypertension, high cholesterol and smoking (id.).

On December 26, 2007 Dr. Richard Bilinski, a non-examining state agency physician, reviewed the medical evidence of record

and opined that Miller could lift 50 pounds occasionally and 25 pounds frequently, could stand or walk for six hours in an eight hour workday and could sit for six hours in an eight hour workday (R. 292-99). Dr. Bilinski noted that Miller has full range of motion in his spine and joints, walks with a normal gait and has no limitations on manipulating objects with his hands (id.).

Dr. M. S. Patil examined Miller on May 7, 2008 (R. 312-15). She noted Miller had used marijuana, cocaine and heroin for approximately 20 years and had last used heroin one week before the examination (id. 312). Miller complained of mild to moderate pain in his back and neck, mild numbness and tingling in his hands, and difficulty walking more than a few blocks, carrying more than a gallon of milk, tying his shoelaces, climbing stairs or standing for more than 30 minutes (id.). He denied any gait imbalance, and Dr. Patil observed normal gait (id. 312-13). Miller also denied any bladder dysfunction (id. 312). Miller's range of motion in his joints and spine was normal, there were no signs of muscle atrophy and grip strength was rated at 5 out of 5 (id. 314). Miller was able to perform various manipulations with his hands normally (including tying his shoelaces), and his motor strength was rated at 5 out of 5 in both upper and lower extremities (id.). Dr. Patil further observed that Miller was able to walk on his heels and toes, get on and off the examination table without assistance, squat and perform tandem

6

walking (id. 315).  Blood pressure was normal, and there was no evidence of cardiopulmonary distress, arrhythmia or tachycardia (id. 313-15).  Dr. Patil's diagnostic impressions were mild to moderate osteoarthritis and Class II obesity (i.e. with a BMI of over 35) (id. 315).

Miller was diagnosed with Type II diabetes mellitus in May 2008 (R. 19, 324).  One year later (in May 2009) Miller's diabetic status report revealed that his average blood glucose level, blood pressure, LDL cholesterol and triglycerides were within target ranges (id. 323).  His HDL cholesterol was lower than the target (id.).  On December 8, 2008 Miller had undergone an echocardiogram test that revealed normal systolic function and normal size and structure of the ventricles, aorta, mitral valve, atriums, pulmonic and tricuspid valve, systemic veins and pulmonary artery (id. 320-21).  Miller's aortic valve exhibited mild calcification and mildly increased thickness (id.).

At the November 4, 2009 Hearing Dr. Stevens testified as an impartial medical expert.  He opined that (1) there was no medical evidence in the record to support Miller's claims of hand numbness or shortness of breath, (2) there was no evidence of leg weakness in either of Miller's consultative examinations, (3) although Miller suffers from degenerative disc disease in his neck and lumbar spine, no impairment listing ("Listing") established by the Social Security Administration ("SSA") was met

7

or equaled, (4) there was insufficient neurological diagnostic evidence to diagnose paresthesia, (5) Miller is obese though not significantly so and (6) Miller could perform medium work based on Dr. Patil's 2008 assessment (R. 67-74).

Vocational expert Dr. Hamersma testified that Miller's past work was heavy and semi-skilled and that Miller has no skills that would be transferable to work at a light or sedentary level (R. 76). ALJ Harmon propounded a hypothetical question as to an individual with the same educational background, work history and age as Miller who could perform only unskilled work, occasionally lift and carry 50 pounds, frequently lift and carry 25 pounds, sit, stand or walk for six hours in an eight hour work day and who was obese but not morbidly so (id. 77). ALJ Harmon specifically noted that Miller's obesity could be an aggravating factor with regard to pain and that he gave some credibility and weight to Miller's claims of pain and possible medication side effects (id.). Dr. Hamersma replied that such a person could work as a hand packager, kitchen helper or general laborer (id.). Within the Chicago metropolitan area, there are 7,500, 12,000 and 15,000 jobs respectively in those categories (id. 77-78).

ALJ Harmon posed a second hypothetical question in which the individual could occasionally lift and carry 25 pounds, frequently lift and carry 10 pounds, could sit for six hours in an eight hour work day but could stand and walk a total of only

8

four hours and not more than 30 minutes continuously, would require a 10 minute break after every 15 minutes of activity, would require a five minute bathroom break every hour and could perform only unskilled work (R. 78). Dr. Hamersma responded that such an individual would be considered disabled at age 55 but not disabled under age 55 (id.). He further stated that no jobs exist at either the light or sedentary levels for an individual with those restrictions (id. 79).

After reviewing the submitted evidence, ALJ Harmon made these findings as to Miller:

    1. He retained disability insurance coverage through December 31, 2007 (R. 15).

    2. He has engaged in no substantial gainful activity since January 1, 2007, the alleged disability onset date (id.).

    3. He has the severe impairments of hypertension, paresthesia in his extremities, degenerative disc disease, obesity, diabetes mellitus and a history of drug abuse (id.).

    4. He did not suffer from any impairment or any combination of impairments that met or medically equaled any Listing before August 25, 2008 (id. 17).

    5. He was capable of performing light work before August 25, 2008 (the day before his 55th birthday) but

9

became disabled upon turning 55 (<u>id</u>.).

      6. His testimony regarding the intensity, persistence and limiting effects of his symptoms was not credible as to the period before August 25, 2008 but was credible as to the period thereafter (<u>id</u>. 18-19).

With those determinations having become Commissioner's final decision, they are now before this Court for consideration.

### Standard of Review and Applicable Law

In reviewing that final decision, this Court considers its legal conclusions de novo (<u>Haynes v. Barnhart</u>, 416 F.3d 621, 626 (7th Cir. 2005)). But because by contrast factual determinations receive deferential review, courts may not "reweigh the evidence or substitute [their] own judgment for that of the ALJ" and will affirm Commissioner's decision "if it is supported by substantial evidence" (<u>id</u>.). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (<u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)(internal quotation marks and citations omitted)).

As cases such as <u>Haynes</u>, 416 F.3d at 626 (internal quotation marks and citations omitted) teach:

> In rendering a decision, the ALJ must build a logical bridge from the evidence to his conclusion [but] need not...provide a complete written evaluation of every piece of testimony and evidence.

Hence "[i]f the Commissioner's decision lacks adequate discussion of the issues, it will be remanded" (<u>Villano v. Astrue</u>, 556 F.3d

558, 562 (7th Cir. 2009)). Reversal is also required if the ALJ has committed a legal error, regardless of how much evidence supports his or her determination (Binion on behalf of Binion v. Chater, 108 F.3d 780, 782 (7th Cir. 1997)).

To qualify for benefits a claimant must be "disabled" within the meaning of the Act (Liskowitz v. Astrue, 559 F.3d 736, 739 (7th Cir. 2009), citing Section 423(a)(1)(E)). "Disability" is defined in Section 423(d)(1)(A) as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Claimants must also demonstrate that the disability arose during the period when they were insured (Section 423(a)(1)(A) and (c)(1)).

Social Security regulations set forth a sequential, five-step inquiry that must be conducted to determine whether a claimant satisfies this definition (Liskowitz, 559 F.3d at 740, citing Reg. §§404.1520 and 416.920). Specifically the ALJ must determine (Dixon v. Massanari, 270 F.3d 1171, 1176 (7th Cir. 2001), citing Reg. §404.1520):

> (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether she can perform her past relevant work, and (5) whether the claimant is capable of performing any work in the national economy.

11

At step five of the analysis, the ALJ may use Medical Vocational Guidelines to determine whether the claimant's exertional limitations prevent him or her from performing any work (Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005)). If, however, the claimant suffers from both exertional and nonexertional impairments, the Medical Vocational Guidelines are not determinative but rather "provide a framework for consideration" (id. at 471, quoting Reg. Pt. 404, Subpt. P., App. 2 §200.00(e)(2)).

**Failure To Discuss a Listing or Its Equivalent**

Despite the ALJ's finding that Miller suffered from the severe impairment of paresthesia (R. 15), he inexplicably failed to articulate any reason why that impairment does not meet or medically equal any Listing, either independently or in combination with one or more of Miller's other impairments. Indeed, the ALJ failed even to mention Miller's paresthesia in step three of the Dixon-specified analysis (id. 17). Because it would of course be inappropriate for this Court to reach its own conclusions on the subject in the first instance, the ALJ's complete failure to consider the issue requires remand (Villano, 556 F.3d at 562).

It also appears that the ALJ failed to consider whether Miller had a combination of impairments that met or equaled a Listing. Although the ALJ noted the language of Social Security

12

Ruling ("Ruling") 02-1p that "a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing" (R. 17), the opinion is devoid of any analysis on the point. Nor does it consider whether any other combination of Miller's impairments meets or equals a Listing. That too requires remand under Villano.

### Credibility Finding

Although this opinion might well end on that note, it is worth discussing as well the ALJ's errors in determining the credibility of Miller's testimony. In evaluating the credibility of statements supporting a Social Security application, an ALJ must comply with Ruling 96-7p, which requires consideration of not only the objective medical evidence but also (1) the claimant's daily activities, (2) the location, duration, frequency and intensity of symptoms, (3) factors that precipitate and aggravate symptoms, (4) type, dosage, effectiveness and side effects of any medications, (5) treatment other than medication the claimant uses for symptom relief, (6) any other measures the claimant uses to relieve symptoms and (7) any other factors concerning the claimants functions limitations due to symptoms.

Ruling 96-7p also requires an articulation of the reasons behind credibility evaluations, as confirmed by the quotation of that Ruling in Brindisi on behalf of Brindisi v. Barnhart, 315 F.3d 783, 787 (7th Cir. 2003):

13

> The reasons for the credibility finding must be
> grounded in the evidence and articulated in the
> determination or decision. It is not sufficient to
> make a conclusory statement that "the individual's
> allegations have been considered" or that "the
> allegations are (or are not) credible."...The
> determination or decision must contain specific reasons
> for the finding on credibility, supported by the
> evidence in the case record, and must be sufficiently
> specific to make clear to the individual and to any
> subsequent reviewers the weight the adjudicator gave to
> the individual's statements and the reasons for that
> weight.

But here is all ALJ Harmon said as to Miller's credibility (R. 18-19):

> After careful consideration of the evidence, I find
> that the claimant's medically determinable impairments
> could reasonably be expected to cause the alleged
> symptoms; however, the claimant's statements concerning
> the intensity, persistence and limiting effects of
> these symptoms are not credible prior to August 25,
> 2008, to the extent they are inconsistent with the
> residual functional capacity assessment derived from
> weighing the full record herein.... Claimant is
> generally credible but only as to a disabling level of
> impairments on and after August 25, 2008.

It is of course totally circular to say that Miller's statements are not credible because they are inconsistent with assessment of his residual functional capacity--an assessment that is itself based on the rejection of Miller's statements as to his limitations. That is exactly the type of "meaningless boilerplate" that such cases as Parker v. Astrue, 597 F.3d 920, 921-22 (7th Cir. 2010) have criticized and that Ruling 96-7p prohibits.

Nowhere does the ALJ explain why he found Miller's

14

statements incredible before August 25, 2008 or how the seven factors set forth in Ruling 96-7p affected the credibility determination. Instead the ALJ merely notes that Dr. Stevens opined that there was "no basis in the medical records to support [Miller's] alleged sensory changes"--presumably Miller's paresthesia--and that Miller was capable of medium level work (R. 18). But the ALJ disagreed with Dr. Stevens on both points elsewhere in his opinion, finding that Miller did have the severe impairment of paresthesia and was capable of only light work (id. 15, 17). Moreover, that statement by Dr. Stevens cannot provide the requisite support for the ALJ's conclusion, for an ALJ "may not discredit a claimant's testimony about [his] pain and limitations solely because there is no objective medical evidence supporting it" (Villano, 556 F.3d at 562).

Equally unexplained is the ALJ's positive credibility determination as to Miller's symptoms after August 25, 2008. Aside from the diagnosis of Miller's diabetes in May 2008, no explanation is given. That is particularly odd in light of the ALJ's earlier statement that "[Miller] doesn't know of any symptoms from diabetes" (R. 18). Failure to comply with Ruling 96-7p, especially in light of established legal precedent criticizing such cursory treatment of a credibility determination, requires remand (Zurawski v. Halter, 245 F.3d 881, 888 (7th Cir. 2001)).

## Conclusion

Due to ALJ Harmon's complete failure to evaluate whether Miller's paresthesia or any combination of his impairments meets or equals a Listing, the decision is remanded to SSA for further proceedings. Upon remand the ALJ should also address the additional deficiencies discussed in this opinion.[5] Accordingly, this Court denies both Miller's motion for summary judgment and Commissioner's request for affirmance, instead remanding the case for further proceedings.

_____
Milton I. Shadur
Senior United States District Judge

Date: September 27, 2011

---

[5] Although none of Miller's other complaints about the decision warrant remand or summary judgment, the ALJ must of course consider whether any of his prior determinations may call for reconsideration in light of the deficiencies identified by this opinion.